

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:AAS/RMP/MAA/CJN/AA
F. #2017R05903

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 15, 2024

<u>By ECF and E-mail</u>

The Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Huawei Technologies Co., Ltd., et al.</u>
              <u>Criminal Docket No. 18-457 (S-3) (AMD)</u>

Dear Judge Donnelly,

      The government respectfully submits this letter in opposition to the motion by defendants Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA Inc., and Futurewei Technologies, Inc. (collectively, "Huawei" or the "Defendants") requesting that the Court assist the Defendants with accessing certain discovery, which the Defendants seemingly request the Court do either by: (1) ordering the government to compel the Bureau of Industry and Security ("BIS") of the U.S. Department of Commerce to grant the Defendants access to discovery materials that can only be shared with the Defendants pursuant to a BIS license; or (2) determining that the provisions of the protective order entered in this case (<u>see</u> the "Protective Order," ECF No. 57) supersede BIS licensing requirements.  (<u>See</u> ECF No. 433.)  In support of this response, the government attaches the Declaration of Matthew S. Borman, Principal Deputy Assistant Secretary for Strategic Trade and Technology Security, U.S. Department of Commerce.  For the reasons set forth below, the Court should deny the Defendants' motion.

I. <u>Background</u>

A. <u>Export Controls and the Export Administration Regulations</u>

The Export Control Reform Act of 2018 ("ECRA"), promulgated at 50 U.S.C. §§ 4801-4852, provides statutory authority for the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 730-774. ECRA provides, among its stated policy objectives, that "the national security and foreign policy of the United States require that the export, reexport and in-country transfer of items, and specific activities of United States persons, wherever located, be controlled." 50 U.S.C. § 4811(2). To that end, ECRA grants the President the authority to control "(1) the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. <u>Id.</u> at § 4812(a). ECRA further grants the Secretary of Commerce the authority to establish the applicable regulatory framework.

Pursuant to statutory and regulatory authority, the U.S. Department of Commerce reviews and controls the export of certain items, including commodities, software, and technologies, from the United States to foreign countries pursuant to the EAR. In particular, the EAR restricts the export of certain technologies that could be detrimental to the foreign policy or national security of the United States. The EAR imposes licensing and other requirements for items subject to the EAR to be lawfully exported from the United States, lawfully re-exported from one foreign destination to another, or lawfully transferred in-country. Depending on the nature of the item, the destination country, the end-use, and the end-user of the item, a license from BIS may be required for export. (<u>See generally</u> Borman Decl.)

Section 758.3 of the EAR provides that "[a]ll parties that participate in transactions subject to the EAR must comply with the EAR." "The U.S. party in interest is the exporter . . . [and] [t]he exporter must determine licensing authority (License, License Exception, or [No License Required]), and obtain the appropriate license or other authorization." 15 C.F.R. § 758.3(a). "The applicant <u>must be the exporter</u>, who is the U.S. principal party in interest with the authority to determine and control the sending of items out of the United States…." 15 C.F.R. § 748.4(a)(1) (emphasis added).[1]

---

[1] Assuming there will be conditions on any license, defense counsel is better suited as the exporter and applicant than is Huawei because any evidence provided to Huawei will be through defense counsel, who can ensure their client's compliance with any license conditions. Indeed, there is no way the U.S. Department of Justice could ensure Huawei's compliance with license conditions, as any attempted oversight would impede Huawei's ability to have unfettered privileged communications with its counsel. (<u>See</u> Borman Decl. ¶ 23.)

Generally, an application for an export license must be submitted online through BIS's license application portal. The license application must identify the commodity, technology, or software being exported, the Export Control Classification Number ("ECCN") from the Commerce Control List ("CCL"), the end-user, the end use, the purpose for the export, as well as any necessary supporting documentation. (See generally Borman Decl.)

### B. The Protective Order

The Protective Order, entered on June 10, 2019, was jointly submitted by the parties after extensive negotiations. (See ECF No. 57.) The Protective Order includes three categories of discovery: Discovery Material, Sensitive Discovery Material, and Attorneys' Eyes Only.

Discovery Material may be used by Huawei only in connection with defending against the instant charges. (See id. ¶ 2.) There is no geographic limitation on access to Discovery Material for potential defense witnesses or Huawei employees whom defense counsel believes are necessary for Huawei's defense. (Id. ¶ 5.)

The Protective Order contemplates additional protections for Sensitive Discovery Materials. That designation may be applied to "identifying information of any potential witness, victim or individual not a party to this litigation; proprietary or sensitive information of a victim financial institution or of a witness; . . . information that could implicate the safety of others; . . . and/or any other information that the government deems in need of heightened protection under t[he] Protective Order." (Id. ¶ 19.) The Protective Order generally requires that Sensitive Discovery Materials – and attorney work product derived from Sensitive Discovery Materials – be reviewed in the United States, and also provides a mechanism for Huawei employees to seek safe passage to the United States for such review. (Id. ¶¶ 13, 14.) The government consistently and freely has granted the Defendants' requests for safe passage to the United States by Huawei in-house counsel and employees.

On or about May 16, 2019 – after initiation of the instant prosecution – BIS added defendants Huawei Technologies Co., Ltd. and Huawei Device Co., Ltd. (the "Listed Defendants") to the Entity List. See 15 C.F.R. § 744 supp. no. 4. Being on the Entity List means that any person or company that wishes to export any technology to the Listed Defendants must first obtain a license from BIS to do so. As relevant to this motion, that means that defense counsel must obtain a license from BIS to provide the Listed Defendants with Discovery Materials that contain technology, including the technology of victims of intellectual property theft. In all previous such requests, including those relevant to the instant litigation, Huawei counsel provided BIS with the pertinent ECCNs and other information necessary for BIS to make an assessment, but has declined to do so here.

On or about October 30, 2023, BIS granted an interim license to Huawei broadly permitting the "export, reexport, or transfer (in-country)" to the Listed Defendants "in connection with the [instant] litigation," of technology contained in Discovery Material, so long as such materials are "treated as 'Sensitive Discovery Material.'" (See ECF No. 433, Ex. B. at 1.) Thus, under the interim license, Huawei personnel and witnesses may access Discovery Materials containing technology without obtaining additional licenses, provided they treat such materials as Sensitive Discovery Materials. (See Borman Decl. ¶¶ 42-43.)

Defense counsel has sought the intervention of the U.S. Department of Justice to obtain from BIS a broader license that would allow defense counsel to export to the Defendants, including the Listed Defendants, the Discovery Materials that are subject to BIS licensing requirements, including outside the United States, subject solely to the limitations applicable to Discovery Materials in the Protective Order; in other words, to not treat the materials as Sensitive Discovery Material. (See ECF No. 433, Ex. C.) According to Principal Deputy Assistant Secretary Borman, Huawei has recently sought – without success – a much broader license "for any technology or software that was not authorized for release to Huawei outside of the United States by the October 2023 authorization." (Borman Decl. ¶ 46.)

On June 14, 2024, Huawei filed the instant motion seeking the Court's assistance, contending Huawei has "tried over two years to obtain a BIS license" without success as to Discovery Materials containing technology. (See ECF No. 433 at 1.)

II. Legal Standard

A. The Prosecution Team

"Courts have construed the term 'government' in [Rule 16 of the Federal Rules of Criminal Procedure] narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the 'government' in general." United States v. Volpe, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999); see also United States v. Chalmers, 410 F. Supp. 2d 278, 289 (S.D.N.Y. 2006) ("[T]he Court is not persuaded that the 'government' for purposes of Rule 16 should be any broader than the 'prosecution team' standard that has been adopted in the Brady line of cases."). Other government agencies with which the prosecution team interacts to coordinate limited aspects of a prosecution "are not so closely aligned with the prosecution as to be considered part of the prosecution team." United States v. Loera, No. 09-CR-466 (BMC), 2017 WL 2821546, at *7 (E.D.N.Y. June 29, 2017); see also United States v. Meregildo, 920 F. Supp. 2d 434, 441-42 (S.D.N.Y. 2013) ("Interacting with the prosecution team, without more, does not make someone a team member." (citing United States v. Stewart, 323 F. Supp. 2d 606, 616-18 (S.D.N.Y. 2004)). As explained in Meregildo, the circumstances that render an agency a member of the prosecution team include "whether the individual actively investigates the case, acts under the direction of the prosecutor, or aids the prosecution in crafting trial strategy." 920 F. Supp. 2d at 442. Additionally, the plain language of Rule 16 makes clear that the government's disclosure obligations only apply to the prosecution team.

B. Disclosures to Defense Counsel

Discovery obligations under Rule 16 of the Federal Rules of Criminal Procedure and Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, are satisfied where defense counsel is made aware of the critical facts. As the Second Circuit has explained, "[E]vidence is not considered to have been suppressed within the meaning of the Brady doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of that evidence." United States v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995) (quotation marks removed, emphasis added). "Thus, where a defendant and his codefendant had agreed to share information about their respective cases, and the defendant's attorney had made representations indicating his awareness of the codefendant's cooperation with the prosecution,

4

the government's failure to disclose a government agent's statements concerning the scope of that cooperation was not a suppression within the meaning of Brady." Id.

As detailed in the government's opposition to the Defendants' July 15, 2024 motion to de-designate the government's February 7, 2022, disclosure letter from Attorneys' Eyes Only to Sensitive Discovery Material, in various contexts, courts have found that disclosures solely to defense counsel satisfy applicable discovery requirements. For example, in United States v. Cobb, 544 F. Supp. 3d 310, 330 (W.D.N.Y. 2021), the court found that providing Brady information on an "attorneys' eyes only" basis satisfied the government's obligations under Brady and provided defense counsel with adequate opportunity to investigate. Analogously, under the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III, the government may satisfy its discovery obligations by producing classified discovery – including discovery that may constitute Brady – solely to defense counsel possessing the requisite classified clearance, even though the defendant will never have access to such classified discovery. See, e.g., United States v. Muhanad Mahmoud Al Farekh, No. 15-CR-268 (BMC), 2016 WL 4444778, at *3 (E.D.N.Y. Aug. 23, 2016) ("I find that providing these [classified] summaries to defendant's counsel satisfies the Government's discovery obligations while at the same time protecting national security."); United States v. Zazi, No. 10-CR-60 (JG), 2011 WL 2532903, at *5 (E.D.N.Y. June 24, 2011) ("Provision of the summaries to Zazi's counsel satisfies the government's discovery obligations in a manner that appropriately protects national security.").

III.  Argument

As discussed below, the Court should deny the defense motion for the following reasons: (1) as BIS is not a part of the prosecution team, the U.S. Department of Justice cannot direct BIS to issue a license to Huawei; (2) the prosecution team has complied with its discovery obligations by providing materials to Huawei counsel; and (3) the Protective Order does not excuse Huawei from compliance with applicable export law.

A.  The Prosecution Team Cannot Direct BIS to Issue a Broader License

BIS is a component of the U.S. Department of Commerce, does not act under the direction of the prosecution team, and has not aided the prosecution in crafting trial strategy. Indeed, BIS is not a party to the Protective Order. Considering these factors, BIS is not a member of the prosecution team. See Meregildo, 920 F. Supp. 2d at 442.

To coordinate on various issues, including attempting to facilitate communications between BIS and the defense, the prosecution team has occasionally conferred with BIS. Because BIS does not act under the direction of the prosecution team and has separate responsibilities and missions, the prosecution team has no legal basis on which to direct that BIS exempt the Defendants from the export control laws. Accordingly, the prosecution team would be unable to comply with any court order directing it to cause BIS to issue a broader license to Huawei. Most notably, because the U.S. Department of Justice is not otherwise a part of the of the export licensing review process set forth in ECRA and the EAR, even if the prosecution team were to request

issuance of a broader license, such a request would not compel any action by BIS.[2] (See Borman Decl. ¶ 24.)

Further, as outlined in the Borman Declaration, "a determination by the Court that an export control authorization from BIS is made irrelevant by the Court's Protective Order would undermine BIS's statutory authority to regulate export controls pursuant to U.S. national security and foreign policy concerns as well as the ability of BIS's interagency partners to review and assess any license application." (Id. ¶ 52.)

### B. The Government's Discovery Obligations Are Satisfied by Disclosure to U.S. Defense Counsel

The government has satisfied its legal obligations by producing discovery to defense counsel. See Cobb, 544 F. Supp. 3d at 330. Pursuant to the 2023 interim license from BIS, employees or representatives of the Listed Defendants may access the discovery at issue throughout the United States if the materials are treated as Sensitive Discovery Materials. It is not incumbent on the prosecution team to ensure that the Defendants may review discovery materials in the country of their choosing. Not surprisingly, the defense has not proffered any legal authority standing for the proposition that the U.S. Department of Justice must seek a license from BIS to allow a defendant on BIS's Entity List to access discovery outside of the United States. Indeed, the government is not aware of any such authority.

The defense's reliance on United States v. Baker, No. 20-CR-288, 2020 WL 4589808, at *4 (S.D.N.Y. Aug. 10, 2010) (see ECF No. 433 at 6), is misplaced. In Baker, the court agreed with a defense proposal to allow the defendants – housed in a pre-trial detention facility during the COVID-19 pandemic – access to materials redacted of their sensitivities, while articulating the uncontroversial principle that "[t]here is a value and an interest in the defendant being able to freely review the evidence against him, on his own time, and without a defense lawyer or anyone else looking over his shoulder." 2020 WL 4589808, at *4. Here, in contrast, the issue is not whether the prosecution team should disseminate the discovery materials directly to the Listed Defendants redacted of any applicable technology.

Similarly unavailing is the Defendants' citation to United States v. Hung, 667 F.2d 1105 (4th Cir. 1981) (see ECF No. 433 at 6), a case in which the court found that nonproduction of certain Jencks material was harmless error, where the materials "provided evidence which was merely cumulative." 667 F.2d at 1107.

---

[2] In their motion, the Defendants indicate that the prosecution team "proposed a process by which the technology categorization forming the basis of the BIS license request could be limited to certain ranges of discovery and generalized descriptions of the technology at issue." (See ECF No. 433 at 6.) More accurately, the prosecution team suggested to the defense an approach that might be acceptable to BIS. The prosecution team has never provided assurances that BIS would approve such an approach.

    C. The Protective Order Does Not Exempt the Defendants' Compliance with Export Law

The Court should reject Huawei's efforts to exempt itself from export control laws administered by the U.S. Department of Commerce based on the Protective Order.

It is of no relevance that the government has determined that certain discovery containing information relating to Huawei's theft of trade secrets can be adequately protected by designating it as Discovery Material, without requiring the heightened Sensitive Discovery Material or Attorneys' Eyes Only designations. The government's designation does not bear on Huawei's obligation to comply with laws administered and enforced by a different government agency – the U.S. Department of Commerce.

Huawei's assertion that "[t]he Court's P.O. in this case, by its own terms, is supposed to be the exclusive source of restrictions on Huawei's access to discovery materials," (ECF No. 433 at 1), is undermined by the undeniable reality that Huawei – a multinational conglomerate –has repeatedly participated in BIS's license review process to obtain controlled technology. (See Borman Decl. ¶¶ 37-41.)

As the Protective Order is silent on the issue of obtaining licenses, it cannot logically be interpreted to exempt the Defendants from abiding with applicable export law, including the EAR, in their quest to obtain a general license from BIS.

IV.    Conclusion

For the foregoing reasons, the government respectfully requests the Court deny the Defendants' motion.

          Respectfully submitted,

          BREON PEACE
          United States Attorney
          Eastern District of New York

By:   /s/_____
      Alexander A. Solomon
      Meredith A. Arfa
      Robert M. Pollack
      Assistant United States Attorneys
      (718) 254-7000

JENNIFER KENNEDY GELLIE
Executive Deputy Chief,
Counterintelligence and Export Control
Section, National Security Division,
U.S. Department of Justice

Christian J. Nauvel
Yifei Zheng
Monica Svetoslavov
Ahmed Almudallal
Trial Attorneys

MARGARET A. MOESER
Chief, Money Laundering and
Asset Recovery Section, Criminal Division,
U.S. Department of Justice

Laura Billings
Taylor Stout
Jasmin Salehi Fashami
Trial Attorneys

Enclosure

Cc:   Clerk of the Court (by ECF and E-mail)
      Counsel of Record (by ECF)