**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NJM:MFS
F. #2017R05903

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 14, 2026

By ECF and Email

The Honorable Ann M. Donnelly
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Huawei Technologies Co., Ltd., et al.
Criminal Docket No. 18-457 (S-4) (AMD)

Dear Judge Donnelly:

The government respectfully submits this letter in response to the defendants' motion to preclude certain exhibits that the government expects to offer in its rebuttal case ("Motion"). At the outset, the government does not intend to offer in its rebuttal case any documents from a Dell laptop which was seized from Yang "Raymond" Zhang on April 27, 2018 ("April 2018 Laptop"), including GX 8355, GX 8355-1, GX 8356, GX 8360, GX 8361, GX 8362, GX 8365, GX 8366, and GX 8903. Accordingly, the defendants' arguments and request for relief in Section II of the Motion are therefore moot. To be clear, the government still expects to offer documents in its rebuttal case that relate to certain Chinese expatriate Huawei employees ("expats") that had worked in sensitive nations. In their defense case, the defendants offered evidence and testimony that these expats were sent back to China for business reasons and not to put them beyond the reach of a federal grand jury investigation in the United States. The evidence that the government expects to offer in its rebuttal case would directly refute the evidence and testimony that the expats were sent out of the United States for business reasons. The defendants' arguments regarding the government's rebuttal evidence, as discussed in Sections I and III of the Motion, lack merit and should be rejected.

## I. Background

In the defense case, among other things, the defendants called Yi "Eric" Zhang and Stefan Brown as witnesses to testify regarding the financial condition of Huawei's operations in the United States in 2016 to 2018. They also testified about headcount reductions during that same period, including as it related to expats being transferred back to China. The government's case-in-chief had included, among other things, a recorded phone call in which two Huawei employees discussed and coordinated a plan to send expats that worked in "sensitive nations" out of the

jurisdiction of the United States. *See* GX 8302-T-R-2 (transcript of the recorded call between Guo Li and Dong Bo). The testimony from Zhang and Brown was meant to further a defense narrative that—despite the explicit statements on the recorded call—the expats from "sensitive nations" were sent home due to a headcount reduction and economic challenges for Huawei's U.S. operations.

Yi Zhang was the Chief Financial Officer of Huawei's U.S. Representative Office in 2016 to 2018. His testimony focused primarily on the economic challenges faced by Huawei and Huawei's efforts to reduce costs and headcount in response. *See, e.g.*, DX-2835_TR (Oct. 2017 email discussing workforce reduction effort); DX-2837.1_TR-R (April 2018 Huawei Technologies Co., Ltd. presentation, "US Representative Office Workforce Adjustment Report"). Zhang explained that, for the headcount reductions, "[w]e prioritized reducing Chinese ex-pats" as a cost-saving measure because Chinese expats purportedly cost 1.5 times more than a local employee. *See* Tr. 6408:08-15. In addition, Zhang described a senior-level meeting at Huawei's headquarters in China in May 2017 that discussed the economic performance of the U.S. Representative Office. *See* Tr. 6409:09-6410:10. The defendants also offered into evidence, and had Zhang explain, the minutes from that May 2017 meeting, which were "Issued by: Zhengfei Ren" and regarding the "Operating Status in the US Market." *See id.*; DX-2833.1_TR.

Stefan Brown, the Director of Data Analytics at Nardello & Co., testified regarding his analysis of the payroll and revenue data for Huawei's U.S. entities. Brown also explained that he reviewed the trial testimony of retired Special Agent Dean Fittz, focusing on the testimony regarding four Huawei expats that departed, or attempted to depart, the United States in early 2018. *See* Tr. 7332:23-7333:15. Brown described his analysis of yearly revenue data from 2016 to 2019 for Huawei's U.S. Representative Office and Huawei Device U.S.A., which Brown said showed a revenue decline during that period. *See* Tr. 7337:20-7339:02; DX-4705. Brown's testimony included a demonstrative regarding local and expat Huawei employees that were terminated in 2017 and 2018. *See* Tr. 7339:03-7341:23; DX-4706 (local and expatriate terminations); DX-4707 (expat terminations only). A discrete part of Brown's discussion of expat terminations also related to the four expats that Agent Fittz had focused on during his testimony, including a comment on the number of expats compared with the overall number of expats terminated in 2017 and 2018. *See* Tr. 7341:24-7344:19; DX-DEMO-10 (chart containing dots relating to the 142 total expat terminations in 2017-2018 including four red dots for employees identified by Agent Fittz); DX-4708 (individual boxes with the initials of 142 expats terminated in 2017-2018). The overall thrust of Brown's testimony was that the expats were sent back to China because of lagging revenues in the United States and that the government's evidence focused on a small percentage of the total expats working for Huawei in the United States.

The government's rebuttal evidence relates to a group of five expats (including some identified in the government's case-in-chief) who all had worked in sanctioned jurisdictions for Huawei and were identified to be transferred out of the United States. The rebuttal evidence will show that those expats had previously worked in sanctioned countries, that the expats were generally paid a salary that was *lower* than other Huawei employees, including those hired locally, and that Huawei was actively hiring new employees in the United States to replace the expats. Finally, the rebuttal evidence will show that the transfer applications to send certain expats back to Huawei's office in China were submitted or approved only *after* the expat had already departed

from the United States, indicating that their removal from the United States was not based on a planned business decision but rather a rushed response to the government's intensifying investigation into Huawei's criminal activities.[1]

## II. Legal Framework

"The normal function of rebuttal is to explain or rebut evidence offered by the adverse party." *United States v. Neary*, 733 F.2d 210, 220 (2d Cir. 1984); *see also United States v. Hiss*, 185 F.2d 822, 832 (2d Cir. 1950) (noting that the decision to admit rebuttal testimony was a "matter[ ] so clearly within the discretion of the judge . . . [that] we think no more need be said."). A trial court has "wide discretion in permitting the introduction of evidence in rebuttal which might well have been brought out in the Government's case in chief." *United States v. Tejada*, 956 F.2d 1256, 1266 (2d Cir. 1992) (quotation omitted). The Second Circuit held that rebuttal evidence was permissible to discredit inferences that a defendant sought to create, and it rejected any requirement that a party must "present evidence in advance to rebut every possible scenario that defendants might paint." *Id.* at 1267; *see also United States v. Barrow*, 400 F.3d 109, 120 (2d Cir. 2005) ("[P]roper rebuttal is not limited to direct contradiction.").

## III. Argument

The government's rebuttal evidence will directly rebut the evidence and testimony from Zhang and Brown that the defendants offered during their affirmative defense case. Specifically, the rebuttal evidence will show that, contrary to Zhang's testimony, the expats sent home in early 2018 generally were *not* more expensive than other employees. The rebuttal evidence will also show that a group of five expats (including three discussed by Agent Fitz) were involved or worked in "sensitive nations" for Huawei. The rebuttal evidence will demonstrate that these expats were not terminated because of a headcount reduction plan due to the bleak economic picture painted by Zhang and Brown. Rather, these expats were hurriedly sent out of the country

---

[1] The government will also seek to admit and publish through the publication witness on rebuttal a redacted version of GX-23601, which is an internal BNPP memo describing a "senior level meeting" between Evan Bai, the Group Treasurer of Huawei, and Clarence Tao, the CEO of BNPP China, that took place on January 17, 2013. *See* GX 23601-R. The memo explains that the purpose of the meeting was to "inquire [regarding] issues related to Iran and US Investigation," and to understand Huawei's "position and counter-measures taken." The memo recounts misrepresentations by Huawei officials made during the meeting, including that Huawei voluntarily restricted its business in Iran beginning in 2011, and that Huawei was in full compliance with U.S. sanctions. The memo is proper rebuttal evidence because it directly responds to the argument advanced by multiple defense witnesses that senior executives at Huawei fostered a culture of compliance, *see* Tr. 6256:13-15, 6268:25-6269:07, 6364:10-6365:12, 7120:25-7121:01, 7126:21-7127:10, and followed the business conduct guidelines, which prohibited making misrepresentations during "external business interactions." DX-502 at 9. Indeed, the defendant's most senior witness testified that senior Huawei employees would not lie to their business partners, because doing so would be inconsistent with a culture of compliance. Tr. 6309:14-16. Responding to this with a specific example in which they did do so establishes a direct contradiction—the quintessence of rebuttal.

after one of them (Yang "Raymond" Zhang) was stopped at an airport in February 2018 and had his electronic devices searched by law enforcement. The rebuttal evidence shows that certain of these expats were sent out of the United States so abruptly that it was not until weeks after they had returned to China that their application to transfer back to Huawei's offices in China was submitted or approved. In sum, the government's rebuttal evidence will correct any misimpression created by the testimony from Zhang and Brown that these expats were removed from the United States for business reasons. This evidence is directly responsive to specific testimony and evidence that the defendants elicited in their defense case and is proper rebuttal evidence. *See Tejada*, 956 F.2d at 1237 ("[W]e are disinclined to overturn a district judge, who has determined—after watching a case unfold—that testimony properly rebuts an inference that a party's adversary has sought to make.").

IV. Conclusion

For the foregoing reasons, the Motion should be denied because its claims regarding exhibits from the April 2018 Laptop are moot and the remainder of the Motion's argument lacks merit.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By: /s/

Alexander A. Solomon
Meredith A. Arfa
Robert Pollack
Matthew Skurnik
Matthew Sullivan
Assistant United States Attorneys
(718) 254-7000

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and
Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan J. Cohen
Jasmin Salehi Fashami
Trial Attorneys

CHRISTIAN NAUVEL
Acting Chief, Counterintelligence and
Export Control Section,
National Security Division,
U.S. Department of Justice

Aaron L. Jennen
Trial Attorney

cc: Counsel for Defendants